FILED

JAN 1 2 2007

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

# UNITED STATES BANKRUPTCY COURT

## Eastern District of California

| | |
|---|---|
| In re<br>Central Valley Processing, Inc.,<br>     Debtor. | Case No.   03-11610-B-7 |
| Michael D. McGranahan,<br>Chapter 7 Trustee,<br>     Plaintiff,<br>v.<br>Fisher Nut Company,<br>a California Corporation,<br>     Defendant. | Adv. No.   05-1028-D<br><br>Trial:      June 20, 2006<br>            10:00 a.m.<br>            Courtroom 13 |

## MEMORANDUM OF DECISION

Pornography doesn't promptly spring to mind when considering the defense of "ordinary course of business . . . of the debtor and the transferee" in connection with alleged preferential transfers under 11 U.S.C. § 547. But the analytical tool used by Mr. Justice Stewart in *Jacobellis v. State of Ohio*, 84 S. Ct. 1676 (1964), wherein he states that he knows pornography when he sees it, would appear to apply here as well, substituting, as appropriate, "ordinary course of business."

The Chapter 7 trustee, Michael D. McGranahan ("the trustee") has sued defendant Fisher Nut Company ("the defendant") to recover as preferences payments *made* by the debtor, Central Valley Processing, 40, 40, and 45 days after shipment of goods and *credited to* the account of the debtor 44, 44, and 49

days, respectively, after such shipment.[1] The check by which the payments were made was dated December 2, 2002. The printed form invoices issued by the defendant called for payment in 30 days. While it is presumed that there were some purchase orders or something similar signed by the parties which included terms for payment, no such documents were offered at trial.

The debtor filed a voluntary Chapter 11 on February 21, 2003–some eighty-three days or approximately two months and twenty-three days later (using 30 day months) . While it is unknown when the checks were charged against the debtor's bank account, it is likely that had the payment been made some ten days earlier, the payments would have been totally outside the preference period.

The parties have stipulated that if the subject payments from the debtor to the defendant fall within 11 U.S.C. § 547(c)(2)(B)–that the payments were made in the ordinary course of business of the debtor and the defendant–that the payments do not constitute an avoidable transfer.[2] Both parties urge that the court should view payments made by the debtor to the defendant in 1997 and 1998 as being within scope of the "ordinary course of business" analysis with respect to the subject payments which were made on December 2, 2002, but the parties differ

---

[1] Case law has established that the ninety day period for identifying preferential payments begins to run when funds are actually credited against the debtor's checking account, thereby delaying until that date the computation of the ninety day period. The inquiry here has a different focus, namely the circumstances of the actual payment, which could be the date of issuance of the check, the mailing of the check, the receipt of the check, or the date that funds were irrevocably in the control of the defendant. The only dates provided by the evidence show the dates the checks were issued and the dates the checks were credited. No evidence as to when the checks were mailed, received, deposited or credited against the debtor's checking account was provided.

[2] The purpose of the § 547(c)(2) ordinary course of business exception "is to leave undisturbed normal financial relations because it does not detract from the general policy of the preference section to discourage unusual action by either the debtor or his creditors during the debtor's slide into bankruptcy." 5 Lawrence P. King, Collier on Bankruptcy ¶ 547.04[2] (15th ed. 2006) (citing H.R. Rep. No. 595, 95th Cong., 1st Sess. 373-74 (1997) *reprinted in* 1978 U.S.C.C.A.N. 5787, 6329).

as to whether the timing of the payments as between the earlier transactions and the later ones favors or defeats their respective positions.

If the prior payments are not considered, there is the question, unresolved in this circuit and subject to a split of authority with respect to other circuits, as to whether a single payment can ever be sufficient to allow a (B) defense.

The relevance of the earlier payments is of course for the court and not the parties to decide, but despite the court's initial view that the earlier payments might be too remote in time to be considered in the "ordinary course of business" analysis, it is difficult to ignore the likelihood that the earlier transactions may have affected the subject payments.

The trustee urges that as the payments were made beyond the 30 day due date noted on the invoice and were later than the payments involved in the earlier transactions between the parties, the payments should be deemed recoverable, although as noted above there is nothing in the evidence to show that payment within that period was in fact a contractual term. But more importantly, there is nothing before the court to suggest that there was any sort of penalty for payment beyond the billing due date.

The only situation in which "ordinary course between the debtor and creditor" would not be the same as ordinary course between the parties would appear to arise only if the parties had a history of dealing in more restricted terms than the industry standard.

Given the stipulation that payment was in accord with industry standards, and noting that no collection activity–not even a phone call inquiring as to payment–occurred, it cannot be found that the payments made were outside the ordinary course of the parties' dealings.

There was no evidence offered on behalf of the trustee that the timing of the payment was in any manner related to cash flow problems being experienced by the debtor, although presumably, had such been the case, the trustee could have

produced evidence to that effect as the pre-trial statement filed by the trustee prior to trial on October 28, 2005, indicated that a former employee of the debtor, one Kim Sriraki, might be called regarding payments to the debtor.

Although the prior transactions between the debtor and the defendant appear somewhat remote, they do indicate that payment beyond the terms noted on the invoice occurred also in the prior transactions and there is no indication that the debtor in the subject transactions made any efforts to ensure that payment would occur within the invoice provision.

The trustee presents essentially a very narrow argument–that the transactions which occurred in 1997 and 1998 where payments were credited on the 4th and 3rd days, respectively, after the invoice due dates establish that the payments credited in 2002 on the 14th, 14th and 19th days following the payment due dates conclusively establishes that the 2002 payment were outside the ordinary course of business of the debtor and the transferee.[3] (Again, this argument totally ignores the fact that the debtor wrote the checks 10, 10, and 14 days after the due date.) But if three or four days is acceptable, what is unacceptable if the invoice due date is the sole applicable standard. Would five days be acceptable? Six days? Seven days? Eight days? Nine days? And so on.

If payments are viewed from the date of delivery, then the contrast is between payments credited 34 and 35 days after delivery–in the case of the earlier payments–and payments credited 44 and 49 days after delivery–in the case of the subject payments–appears much smaller. It should be further noted that the payments for the 2002 invoices were dated December 2, 2002, indicating that the

---

[3]The plaintiff has used as a benchmark for determining the payment date, the date on which the checks were credited on the defendant's books. The that is not deemed a proper approach. Here the inquiry is on the actions of the debtor and the circumstances surrounding the act of payment. Given the short distance between the offices of the debtor and the defendant, it is possible that the checks were received the day after issuance, but simply not credited for a few days.

invoices were paid (a check issued) 10, 10 and 15 days following the invoice due date, providing numbers of 40, 40, and 45 days after delivery. Further, the court will take judicial notice of the fact that in 2002 Thanksgiving was on November 28. The check for payment was written on the following Monday, December 2, and the intervention of that holiday weekend may well have been a factor in any delay with respect to issuance of the checks.

Plaintiff has not suggested what the proper line of demarcation would be and common sense dictates that a rule which arbitrarily and exclusively looks to intervening days simply is unworkable. Accordingly, other factors must be considered and in the court's view the expectations of the creditor are a major factor.[4]

Ron Fisher, president of the defendant and the sole witness at trial, testified that at the end of the 30 day period noted on the subject invoices no collection activity was undertaken–presumably not even a phone call inquiring as to payment–and that as a general policy no such activity would be pursued for a period of at least sixty days following delivery.

In summary, the court relies on these factors for its decision:

1. Had the payments been deducted from the debtor's bank account by November 23, 2002, they would have been outside the preference period.

2. There was no evidence that as of December 2, 2002, eighty-three days before the voluntary Chapter 11 filing, the debtor was experiencing financial difficulties and was sliding towards bankruptcy..

3. There was no evidence that payment beyond the invoice due date with respect to the earlier transactions between the debtor generated any concern by the defendant.

---

[4] It is to be noted that the underlying contracts which presumably established the date payment was expected are not part of the evidence. Only the form invoices give a suggestion, but not convincing proof as to what any purchase agreement might have provided.

4. There was no evidence that any form of collection activity was undertaken by the defendant prior to receipt of the payments.

5. The defendant's president testified that his company's policy was to allow thirty days beyond the invoice due date before initiating any sort of collection activity.

6. The intervention of the Thanksgiving holiday just prior to the issuance of the checks could well have impacted the day of payment.

For the reasons stated above the court finds and concludes that the subject payments were within the scope of the exception set forth in 11 U.S.C. § 547(c)(2)(B).

This memorandum will constitute the court's findings of fact and conclusions of law. A separate judgment will issue.

Dated January 12, 2007

Brett Dorian
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

CERTIFICATE OF MAILING

    The undersigned deputy clerk in the office of the United States Bankruptcy Court for the Eastern District of California hereby certifies that a copy of the document to which this certificate is attached was mailed today to the following entities listed at the address shown on the attached list or shown below.

Lisa Holder
4550 California Ave 2nd Fl
Bakersfield, CA 93309

Michael Abril
1600 Truxtun Ave
PO Box 2026
Bakersfield, CA 93303-2026

DATED: 1-12-07

By: _Tamara Bagen_
Deputy Clerk

EDC 3-070 (New 4/21/00)